# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF INDIANA
### INDIANAPOLIS DIVISION

| | |
|---|---|
| NICHELLE L. JACKSON, | CLASS ACTION COMPLAINT |
| Plaintiff, | |
| v. | CASE NO. 1:19-cv-04052 |
| MED-1 SOLUTIONS, LLC, and RICHARD R. HUSTON, ATTORNEY AT LAW, | JURY TRIAL DEMANDED |
| Defendants. | |

## CLASS ACTION COMPLAINT

NOW comes NICHELLE L. JACKSON ("Plaintiff"), by and through her attorneys, Sulaiman Law Group, Ltd. ("Sulaiman"), on behalf of herself and all others similarly situated, complaining as to the conduct of MED-1 SOLUTIONS, LLC ("Med-1") and RICHARD R. HUSTON, ATTORNEY AT LAW ("Mr. Huston") (collectively "Defendants") as follows:

### NATURE OF THE ACTION

1. Plaintiff brings this action on behalf of herself and numerous other individuals, against Defendants, pursuant to the Fair Debt Collection Practices Act ("FDCPA") under 15 U.S.C. § 1692 *et seq.* and the Indiana Deceptive Consumer Sales Act ("IDCSA") under I.C. 24-5-0.5 *et seq.*, for Defendants' unlawful conduct.

### JURISDICTION AND VENUE

2. This action arises under and is brought pursuant to the FDCPA. Subject matter jurisdiction is conferred upon this Court by 15 U.S.C §1692, 28 U.S.C. §§1331 and 1337, as the action arises under the laws of the United States. Supplemental jurisdiction exists for the state law IDCSA claim pursuant to 28 U.S.C. §1367.

1

3. Venue is proper in this Court pursuant to 28 U.S.C. §1391 as Defendants reside within the Southern District of Indiana, conduct business in the Southern District of Indiana, and a substantial portion of the events or omissions giving rise to the claims occurred within the Southern District of Indiana.

## PARTIES

4. Plaintiff is a natural person over 18 years-of-age residing in Indianapolis, Indiana, which lies within the Southern District of Indiana.

5. Plaintiff is a "person" as defined by 47 U.S.C. §153(39).

6. Plaintiff is "any person" as that term is used in 15 U.S.C. § 1692d.

7. Plaintiff is a "consumer" as that term is defined by 15 U.S.C. § 1692a, because she is a natural person obligated or allegedly obligated to pay any debt arising out of a transaction where the subject of the transaction was primarily for personal, family, or household purposes.

8. Med-1 is a debt collection agency that specializes in the collection of delinquent and defaulted medical debts. Med-1. Med-1 is a limited liability company organized under the laws of the state of Indiana with its principal place of businesss located at 517 U.S. Highway 31 North, Greenwood, Indiana.

9. Med-1 is a debt collector, as defined by 15 U.S.C. § 1692a, because it regularly uses the mails and/or telephones to collect, or attempt to collect, directly or indirectly consumer delinquent debts owed or due or asserted to be owed or due another. Med-1 is similarly a debt collector because it is a person who uses any instrumentality of interstate commerce or the mails for a business whose principal purpose is the collection of debts.

10. Med-1 identifies itself as a debt collector and has been a member of the Association of Credit and Collection Professionals since 2004.[1]

11. Mr. Huston is an attorney for Med-1 whose job duties include purportedly reviewing and signing the collection letters Med-1 sends to consumers.

12. Mr. Huston is a debt collector, as defined by 15 U.S.C. § 1692a, because he is a person who uses any instrumentality of interstate commerce or the mails for a business whose principal purpose is the collection of debts. Mr. Huston is similarly a debt collector because he regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to owed or due another.

13. Defendants are "person[s]" as defined by 47 U.S.C. §153(39).

14. Defendants acted through their respective agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers at all times relevant to the instant action.

### FACTUAL ALLEGATIONS

15. The instant action arises out of Defendants' attempts to collect upon a series of five medical debts ("subject debts") said to be owed by Plaintiff.

16. The subject debts stem from a series of medical services Plaintiff received from Community Health Network ("CHN") at various times in 2019.

17. Upon information and belief, after Plaintiff purportedly defaulted on the subject debts, CHN subsequently turned collection of the subject debts over to Defendants.

18. On or around August 9, 2019, Defendants sent or caused to be sent two correspondences to Plaintiff ("August 9 Letters") attempting to collect two of the subject debts. **Exhibit A.**

---

[1] http://www.acainternational.org/search#memberdirectory

19. The letterhead of the August 9 Letters reads "Richard R. Huston, Attorney At Law."

20. The August 9 Letters are exactly the same, save for the specific account information and balances of the different debts referenced in each particular correspondence.

21. The August 9 Letters' signature line purports to be signed by Mr. Huston. However, the correspondences merely contain an indiscernible scribble.

22. Exactly one week later, on or about August 16, 2019, Defendants sent or caused to be sent three correspondences to Plaintiff ("August 16 Letters") attempting to collect upon the remaining three subject debts. **Exhibit B.**

23. The August 16 Letters are exactly the same as the August 9 Letters (including the indiscernible signatures), save for the specific account information and balances of the different debts referenced in each particular correspondence.

24. The nature and pattern with which Plaintiff received the August 9 and August 16 Letters demonstrates the extent to which these letters were, contrary to the representations contained therein, not sent as the result of Mr. Huston's meaningful review of Plaintiff's accounts prior to sending the letters.

25. The fact Plaintiff received multiple nearly identical collection letters on the same days exactly one week apart suggests that the decision and timing of Defendants sending their collection letters is determined by some sort of automated process that generates the contents of the letters and determines when such letters should be sent.

26. However, because the collection letters identify Mr. Huston's as attorney at law in the letterhead and because Mr. Huston has purported to sign the collection letters, such representations suggest that Mr. Huston himself took the time to personally review the circumstances of Plaintiff's

account in order to make the considered, professional judgment that the collection letters should be sent.

27. However, given the formulaic nature of the letters and the fact such formulaic letters were sent on the same days exactly one week apart, it appears a computer program or other automated process is what actually made the determination as to when and whether the letters would be sent.

28. The indiscernible scribble apparent on each collection letter lends further credence to the automated and mass-mailing nature of Defendants' collection letters.

29. When taken together with the apparently automated nature of Defendants' collection letter generation, the nature of the signatures suggest that Mr. Huston, after being handed a stack of letters that were automatically generated, merely affixes his signature in a rapid and assembly-like fashion, absent engaging in the review of Plaintiff's accounts incumbent upon an attorney sending such collection letters.

30. Additionally, the bar code evident on each of the collection correspondences similarly suggests that such bar codes are included as a means for Defendants to more readily track the mass amount of automatically generated collection letters it sends to consumers.

31. Furthermore, CHN is "a non-profit health system with more than 200 sites of care and affiliates throughout Central Indiana" and is further "Indiana's leader in providing convenient access to exceptional healthcare services." According to CHN's website, it had over 2 million "patient encounters" last year, as well as 700 thousand plus patient visits with its doctor.[2]

32. CHN further works with Defendants on a substantially regular, if not exclusive, basis.

---

[2] https://www.ecommunity.com/about

33. Given the size of CHN and the vast amount of patients it sees, it stands to reason that CHN has a proportionally large number of accounts that are turned over to Defendants for collection purposes.

34. Given CHN's size and the volume of its collection needs, in conjunction with the fact Plaintiff received multiple letters from Defendants on the same days exactly one week apart in relation to CHN debts, it would be impossible for Mr. Huston to have sufficiently reviewed Plaintiff's account prior to sending the letters at issue.

35. Instead, upon information and belief, Defendants allow Mr. Huston's signature to be affixed to thousands of collection letters on a weekly basis without Mr. Huston engaging in a meaningful review of the underlying accounts prior to determining that such collection letters should be sent.

36. Upon information and belief, Defendants send, on a monthly basis, upwards of 20,000 collection letters that are signed by attorneys

37. The lack of meaningful review in the correspondences sent by Defendant is further evinced upon considering and reviewing the multitude of complaints that have been filed against Med-1 in federal courts throughout the country, as well as with the Consumer Financial Protection Bureau.

38. These complaints elucidate a problematic course of conduct (e.g., attempting to collect upon a debt not owed, continuing to attempt to collect upon debts not owed, making false statements, etc.) which seemingly would or could have been avoided had Mr. Huston reviewed the collection letters sent by Defendants prior to such letters being sent.

39. Defendants' communications, purportedly reviewed by Mr. Huston prior to being sent, are done with the goal to exert undue pressure on Plaintiff and consumers generally to compel

them into making payment out of fear that Mr. Huston, an attorney, will file a lawsuit against them if payment is not made.

40. As a result of receiving the correspondence, Plaintiff was unfairly confused regarding Defendant's representations and examination of the subject debts, and was further subjected to undue pressure and anxiety that an attorney had reviewed her accounts and determined they were proper for legal action.

## <u>CLASS ACTION ALLEGATIONS</u>

41. Plaintiff brings this action on behalf of herself and other similarly situated residents of the State of Indiana against Defendants for their violations of the FDCPA and IDCSA.

42. Plaintiff brings this action against Defendants, both on her own behalf and as a class action on behalf of the following class (the "Class"):

> All persons who received a collection letter during the one year preceding the filing of this action through the date of class certification from Defendants that was signed by Mr. Huston and which represented that the communication was from Richard R. Huston, Attorney at Law.

43. This action is properly maintainable as a class action under the Federal Rules of Civil Procedure 23(a).

44. The Class outlined above consists of hundreds or more persons throughout the state of Indiana such that joinder of all Class members is impracticable.

45. There are questions of law and fact that are common to the Class members that relate to Defendants' violations of the FDCPA and IDCSA, especially because the correspondences sent by Med-1 and Mr. Huston were form collection letters, thus demonstrating the common course of Defendants' conduct as it relates to the respective Class members.

46. The claims of Plaintiff are typical of the claims of the proposed Class because they are based on the same legal theories, and Plaintiff has no interest antagonistic to the interest of the Class members.

47. Plaintiff is an adequate representative of the Classes and has retained competent legal counsel experienced in class actions and complex litigation.

48. The questions of law and fact common to the Class predominate over any questions affecting only individual Class members, particularly because the focus of the litigation will be on the conduct of Med-1 and Mr. Huston. The predominant questions of law and fact as they relate to the Class include but are not limited to: (i) whether Defendants violated the FDCPA by sending collection letters to Class Members representing that such letters were from an attorney; (ii) whether Defendants violated the FDCPA by sending collection letters to Class Members representing that such letters were reviewed by an attorney; (iii) whether Defendants' form collection letters violate the FDCPA; and (iv) the type and amount of relief to which the Plaintiff and Class Members are entitled.

49. A class action is superior to other available methods for the fair and efficient adjudication of this controversy, as the pursuit of hundreds of individual lawsuits would cause a strain on judicial resources and could result in inconsistent or varying adjudication, yet each Class member would be required to prove an identical set of facts in order to recover damages.

**COUNT I – VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT**
PLAINTIFF INDIVIDUALLY AND ON BEHALF OF THE CLASS, AGAINST DEFENDANTS

50. Plaintiff repeats and realleges paragraph 1-49 as though fully set forth herein.

   a. **Violations of the FDCPA § 1692e**

51. The FDCPA, pursuant to 15 U.S.C. §1692e, prohibits a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

52. In addition, this section enumerates specific violations, such as:

> "The false representation or implication that any individual is an attorney or that any communication is from an attorney." 15 U.S.C. § 1692e(3).
>
> "The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." 15 U.S.C. §1692e(10).

53. Defendants violated 15 U.S.C. §§ 1692e, e(3), and e(10) by sending collection letters to Plaintiff suggesting that such letters were from, and reviewed by, an attorney – Mr. Hutston. The nature of the collection letters and the circumstances surrounding Plaintiff's receipt of such letters demonstrates the extent to which such letters were the result of mass-produced letter creation campaign. Further, Defendants send at least 20,000 collection letters each month. Based on the sheer volume of collection letters Defendants sends on a monthly basis, as well as the limited amount of attorneys responsible for reviewing these letters, Defendants could not have engaged in a meaningful review of each collection letter sent. Sending form collection letters said to be from an attorney when such attorney did not engage in a meaningful review of the letter and associated accounts falsely implies that such attorney has reviewed the file and made the professional, considered determination to send the letter. Instead, the lack of sufficient review and the lack of any attorney judgment as to whether to send collection letters is in violation of the FDCPA.

### b. Violations of the FDCPA § 1692f

54. The FDCPA, pursuant to 15 U.S.C. § 1692f, prohibits a debt collector from using "unfair or unconscionable means to collect or attempt to collect any debt."

9

55. Defendants violated § 1692f when it unfairly and unconscionably attempted to collect on a debt by falsely representing to Plaintiff that the correspondences at issue were reviewed by Mr. Huston. Based upon the mass produced nature of Defendants' collection letters, Defendants unfairly attempted to escalate the concern over the subject consumer debt in Plaintiff's mind by suggesting Mr. Huston had reviewed Plaintiff's accounts and decided they were appropriate for legal action. These means employed by Defendants only served to worry and confuse Plaintiff.

WHEREFORE, Plaintiff, NICHELLE L. JACKSON, respectfully requests that this Honorable Court grant the following:

a. Declaring that the practices complained of herein are unlawful and violate the aforementioned bodies of law;

b. Certification of the Class requested above and appointment of the Plaintiff as Class Representative and of her counsel as Class Counsel;

c. Statutory damages under 15 U.S.C. § 1692k(a);

d. Awarding Plaintiff costs and reasonable attorney fees as provided under 15 U.S.C. §1692k(a)(3); and

e. Awarding any other relief as this Honorable Court deems just and appropriate.

**COUNT II – VIOLATIONS OF THE INDIANA DECEPTIVE CONSUMER SALES ACT**
PLAINTIFF INDIVIDUALLY AND ON BEHALF OF THE CLASS, AGAINST DEFENDANTS

56. Plaintiff repeats and realleges paragraphs 1 through 55 as though fully set forth herein.

57. Defendants violated I.C. 24-5-0.5-3(a) and (b)(1) by engaging in an unfair, abusive and deceptive practice through the nature of its collection letters sent to Plaintiff.

58. The IDCSA states:

> "A supplier may not commit an unfair, abusive, or deceptive act, omission, or practice in connection with a consumer transaction. Such an act, omission, or practice by a supplier is a violation of this chapter whether it occurs before, during, or after the transaction. An

> act, omission, or practice prohibited by this section includes both implicit and explicit misrepresentations." I.C. 24-5-0.5-3(a).

> "Without limiting the scope of subsection (a), the following acts, and the following representations as to the subject matter of a consumer transaction, made orally, in writing, or by electronic communication, by a supplier are deceptive acts: That such subject of a consumer transaction has sponsorship, approval, performance, characteristics, accessories, uses, or benefits it does not have which the supplier knows or should reasonably know it does not have." I.C. 24-5-0.5-3(b)(1).

59. Plaintiff is a "person" as defined by the IDCSA, I.C. 24-5-0.5-2(a)(2).

60. Defendants are both "supplier[s]" as defined by the IDCSA, I.C. 24-5-0.5-2(a)(3).

61. Defendants' collection letters constitute "consumer transactions" as defined by the IDCSA, I.C. 24-5-0.5-2(a)(1)(C).

62. Defendants engaged in unfair and deceptive behavior through the collection letters they sent to Plaintiff. Through the collection letters at issue, Defendants represented that Mr. Huston had sufficiently and meaningfully reviewed the nature of the underlying accounts prior to such letters being sent. However, given the mass-produced nature of these letters and the sheer volume of collection letters Defendants send on a monthly basis, the representations as to attorney involvement in the collection letters is demonstrably false. Falsely representing to consumers that an attorney had reviewed the nature of her accounts prior to sending the collection letters at issue is the precise sort of deceptive and unfair conduct by debt collectors sought to be redressed through the IDCSA.

63. The IDCSA further states:

> "A person relying upon an uncured or incurable deceptive act may bring an action for the damages actually suffered as a consumer as a result of the deceptive act or five hundred dollars ($500), whichever is greater. The court may increase damages for a willful deceptive act in an amount that does not exceed the greater of: (1)

three (3) times the actual damages of the consumer suffering the loss; or (2) one thousand dollars ($1,000)." I.C. 24-5-0.5-4(a)(1)(2).

64. Defendants conduct constituted an incurable deceptive act upon which Plaintiff relied. Plaintiff was falsely led to believe that Mr. Huston had reviewed the circumstances of her underlying accounts prior to sending the collection letters at issue. Plaintiff relied on this representation, as she was subjected to undue stress and anxiety believing that her accounts were actively being considered by an attorney for potential legal action. Defendants' misrepresentations in this regard were part of a scheme, artifice, or device which was intended to mislead Plaintiff and similarly situated consumers. Defendants, as debt collectors operating within the state of Indiana, are undoubtedly aware of the extent to which attorneys are expected to be involved in the sending of collection letters bearing such attorneys' signatures. However, Defendants, in an effort to increase profits while decreasing the amount of time it takes to achieve such profits, have eschewed their duties and instead implemented a system which allows mass amounts of collection letters to be sent to consumers containing blatantly false representations.

65. Defendants conduct the above described behavior on a wide and frequent basis. This goes against the state's goal of preventing consumers from being deceived and mislead by debt collectors.

WHEREFORE, Plaintiff, NICHELLE L. JACKSON, respectfully requests that this Honorable Court enter judgment in her favor as follows:

a. Declaring that the practices complained of herein are unlawful and violate the aforementioned statutes and regulations;

b. Awarding Plaintiff damages, in an amount to be determined at trial, as provided under I.C. 24-5-0.5-4(a)(1)(2);

c. Awarding Plaintiff costs and reasonable attorney fees as provided under I.C. 24-5-0.5-4(a);

d.  Enjoining Defendants to cease contacting Plaintiff; and

e.  Awarding any other relief as this Honorable Court deems just and appropriate.


Dated: September 27, 2019                                          Respectfully submitted,

s/ Nathan C. Volheim                                               s/Taxiarchis Hatzidimitriadis
Nathan C. Volheim, Esq. #6302103                                   Taxiarchis Hatzidimitriadis, Esq. #6319225
Counsel for Plaintiff                                              Counsel for Plaintiff
Admitted in the Southern District of Indiana                       Admitted in the Southern District of Indiana
Sulaiman Law Group, Ltd.                                           Sulaiman Law Group, Ltd.
2500 South Highland Ave., Suite 200                                2500 South Highland Ave., Suite 200
Lombard, Illinois 60148                                            Lombard, Illinois 60148
(630) 568-3056 (phone)                                             (630) 581-5858 (phone)
(630) 575-8188 (fax)                                               (630) 575-8188 (fax)
nvolheim@sulaimanlaw.com                                           thatz@sulaimanlaw.com


s/ Eric D. Coleman
Eric D. Coleman, Esq. # 6326734
Counsel for Plaintiff
Admitted in the Southern District of Indiana
Sulaiman Law Group, Ltd.
2500 South Highland Ave., Suite 200
Lombard, Illinois
(331) 307-7648 (phone)
(630) 575-8188 (fax)
ecoleman@sulaimanlaw.com